## COLE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 29, 1920.)

No. 5597.

**Counterfeiting ⬤⟿16—Indictment describing "die" as "mold" not objectionable.**

In Penal Code, § 169 (Comp. St. § 10339), making it an offense to make or have in possession "any die, hub or mold * * * in likeness or similitude, as to the design or the inscription thereon, of any die, hub or mold designated" for the coining of coins of the United States, the words "die" and "mold" are used interchangeably, and either may be used to designate the same article, and an indictment for its violation is not bad because an article described therein as a "mold" is technically a "die."

[Ed. Note.—For. other definitions, see Words and Phrases, First and Second Series, Die; Mold.]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Criminal prosecution by the United States against Jack Cole. Judgment of conviction, and defendant brings error. Affirmed.

A. R. Morrison, of Denver, Colo., for plaintiff in error.

Walter F. Daly, Asst. U. S. Atty., of Denver, Colo. (Harry B. Tedrow, U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

CARLAND, Circuit Judge. Plaintiff in error, hereafter defendant, was indicted on an indictment containing six counts, each of which charged a violation of section 169, Penal Code (Comp. St. § 10339). The first count charged that the defendant—

"did knowingly, willfully, unlawfully, and feloniously, and without lawful authority, make and cause and procure to be made a certain mold of plaster, which said mold was then and there in likeness and similitude as to the design and inscription thereon of a mold theretofore designated for the coining and making of certain genuine silver coins of the United States, which had theretofore been coined at the mints of the United States and commonly called one dollar, of the mintage of 1900."

The second count charged that defendant—

"did knowingly, willfully, unlawfully, and feloniously, and without lawful authority, have in his possession a certain mold, which said mold was then and there made of plaster, and was then and there in likeness and similitude as to the design and inscription thereon of a mold theretofore designated for the coining and making of certain genuine silver coins of the United States, which had theretofore been coined at the mints of the United States and called one dollar, of the mintage of 1900."

The third and fourth counts in the same language charged the making and having in possession of a similar mold in similitude of a silver dollar of the mintage of 1884. The fifth and sixth counts in similar language charged the making and having in possession of a similar mold in similitude of a genuine silver dollar of the mintage of 1881.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The defendant was convicted and sentenced on all counts of the indictment.

For the purpose of sustaining the several charges in the indictment, counsel for the United States, over the objection of counsel for defendant, introduced in evidence Exhibits A, B, and C. Exhibit A consisted of plaster of paris set in a wooden frame of about 2⅝ inches by 4 inches in size and containing an impression of the obverse side of a United States silver dollar of the mintage of the year 1881. Exhibit B was a piece of plaster of paris about 4¾ inches by 3½ inches in size, containing an impression of the obverse side of a United States silver dollar of the mintage of the year 1900. Exhibit C was a piece of plaster of paris about 3½ inches by 2½ inches in size, containing an impression of the obverse side of a United States silver dollar of the mintage of 1884. By motion to direct and otherwise, counsel for defendant raised two questions:

(a) Were these exhibits, being one side of a silver dollar, molds as charged in the indictment, or was there a fatal variance in the proof?

(b) The evidence having shown beyond dispute that the United States did not use what may be technically called molds in the making of genuine silver dollars for the years 1881, 1884, and 1900, but did make said coins by what is technically called a die, was there a fatal variance between the allegations of the indictment and the evidence on this point?

The indictment charged that the mold which defendant made and had in his possession was of the likeness and similitude, as to the design and inscription thereon, of a mold theretofore designated for the coining and making of certain genuine silver coins for the years 1881, 1884, and 1900. Counsel for defendant claims that, if the United States had not for said years designated what is technically called a mold for the coinage of silver coin for those years, then the mold that the defendant made and had in his possession was not in likeness and similitude to any mold that the United States had ever designated.

Section 169, Penal Code, reads as follows:

"Sec. 169. Whoever, without lawful authority, shall make, or cause or procure to be made, or shall willingly aid or assist in making, any die, hub, or mold, or any part thereof, either of steel or plaster, or any other substance whatsoever, in likeness or similitude, as to the design or the inscription thereon, of any die, hub, or mold designated for the coining or making of any of the genuine gold, silver, nickel, bronze, copper, or other coins of the United States, that have been or hereafter may be coined at the mints of the United States; or whoever, without lawful authority, shall have in his possession any such die, hub, or mold, or any part thereof, or shall permit the same to be used for or in aid of the counterfeiting of any of the coins of the United States hereinbefore mentioned, shall be fined not more than five thousand dollars and imprisoned not more than ten years."

We are of the opinion that both contentions of counsel for defendant may be considered together. The object and purpose of the law was to prevent the counterfeiting of the coin of the United States. Congress must be presumed to have known that the words "die" and "mold," while for some purposes indicating different instruments, so far as the making of the coins of the United States was concerned, the instrument used might be called a die or mold interchangeably.

It appears from the evidence that, if the reverse side of the genuine silver dollar was made to accompany either of Exhibits A, B, or C, there could be no adjustment of them that would permit the pouring of molten metal upon them in such a way as to make an imitation of a genuine silver dollar. In other words, they were used by the counterfeiter as dies. That the words "die" and "mold" may be used interchangeably to indicate the same instrument is shown by standard authority:

"Close molds, or molds in two parts, called the drag and the case (or cope), forming together a two-part flask, one part being placed over the other, and each being impressed with one half of the matrix or pattern." "The type mold of type founders is of steel, in two pieces, making right and left halves." Cent. Dict. vol. 6, p. 3820. "Die, to mold or form with a die or with dies." Cent. Dict. vol. 3, p. 1606.

Mr. Leech, chief clerk, United States Mint, Denver, testified that two dies are used in the coinage of a silver dollar, the obverse and reverse. The obverse die is the die with the, date upon it; the reverse is the other side. We conclude that each of the Exhibits A, B, and C may be properly called a die or mold, as we are of the opinion that Congress did not intend to use the words "die" and "mold" in a technical sense, but intended to prevent the making or having in possession an instrument, whether called a die or mold, of the likeness and similitude as to the design or the inscription thereon of any instrument designated for the coining or making of any of the genuine coins of the United States, whether called a die or mold

Judgment affirmed.