Stewart, J.
The question presented in this appeal is as follows: Is the personal property, in the form of flasks, cast iron shapes, weights, and clamps, owned by the company exempt from taxation under Section 5325, General Code?
That section reads in part as follows:
“The term ‘personal property’ as so used, includes every tangible thing being the subject of ownership, whether animate or inanimate, other than patterns, jigs, dies, drawings, money and motor vehicles registered by the owner thereof, and not forming part of a parcel of real property, as hereinbefore defined * *
The question we must decide is whether the flasks with which the present case is concerned are exempt from taxation by reason of being “dies.”
The commissioner argues, and a dissenting member of the Board of Tax Appeals so held, that the flasks under consideration are the outside containers which *299 hold the sand in place and of themselves have nothing whatever to do with the shape of the molded casts. He argnes further that the operations of the company, whether they be pouring directly into a container such as is found in a steel mill ingot mold operation or into a container in which a desired shape has been hollowed out in the sand, are very similar, and he relies upon the case of Wheeling Steel Corp. v. Evatt, Tax Commr,, 143 Ohio St., 71, 98, 54 N. E. (2d), 132, where in the opinion it is stated: “We agree with the Board of Tax Appeals in its finding that the molds are not dies and were properly included in the assessment as taxable property.”
The company maintains that the flasks in the present case are fully confined on all sides except for small apertures and that the castings formed therein are shaped by reason of pressure by the heated steel and the forcible retention in shape by the flasks, and that, therefore, the flasks are “dies” within the meaning of the statute.
In discussing the Wheeling Steel case, supra, the Board of Tax Appeals made the following observations :
“* * * Such molds bear little resemblance to a molder’s flasks which are used once and perhaps never again, while ingot molds are used over and over again, simply' to give convenient shape, weight and size to semiproeessed raw material which will again be heated and rolled or drawn to a desired gage, form or shape. Ingot molds are nothing more than receptacles to hold molton steel or pig iron to an average weight, size and shape for convenience in further processing. Appellant’s molds produce a finished product ready for use in conformity to its customers’ order and specifications. The word ‘dies’ contemplates that such an instrument, tool or contrivance, or any application of several implements used to exert force from within or *300 without, will form and shape a finished or semifinished product with the precision and nicety that the consumer demands. Ingot molds only partially resist the force of molten metal. It is really only confined on the bottom and sides. The pressure and force expended is exerted upwards and is not confined, but simply seek its level as does any liquid poured into a container.
“It must be conceded that sand alone could not confine heavy red hot molten iron within a sand cavity; and that the rigid flask and the other items are indispensable if it is to be confined within space in the mold and the casting produced in the shape and form desired.- It must be apparent that all of these questioned items play their part in maintenance of the cavity within the mold which imparts form to the product and resists the force applied from within the molten metal. What boots it whether the force applied to make an article true to form be centripetal or centrifugal? In the making of seamless tubing, force is applied from both within and without. Plastic and viscous materials can only be formed into desired shapes by being confined from without unless it be in the case of some rubber goods like balloons, which are produced by dipping form in latex. The Legislature made no distinction. We can perceive none. After examining numerous present day mechanical authorities on ‘dies,’ it becomes more and more difficult to understand how an all comprehensive definition can possibly be stated.
i t # * *
“* * * To hold that which forms and shapes the product of an industry by the application of force, no matter from what source exerted, to be a die, is but just and fair. All are thereby treated alike and none are favored. * * *”
The word, “dies,” is one of many meanings, and the *301 interpretation of the language used by the General Assembly in Section 5325, General Code, should be consistent with the rationale of that section.
Dictionaries have definitions of numerous types of dies to which the section would clearly not apply, such as dies used for gambling or for cutting machine screw threads on metal cylinders.
A fair construction of Section 5325 would limit the definition of “dies” to those special types which by their nature are capable of only special uses as distinguished from the molds with which the Wheeling Steel case, supra, was concerned.
“Die” is defined in the New Century Dictionary as “one of a pair of stamps or the like formed as counterparts for impressing, shaping, or forming something. ’ ’
In 26 Corpus Juris Secundum, 1302, “die” is defined as follows: “A piece of metal on which is cut a device which by pressure is to be placed upon some softer body. While the words ‘die’ and ‘mold’ for some purposes indicate different instruments, for other purposes they are used interchangeably.” Citing Cole v. United States (C. C. A. 8, 1920), 269 F., 250.
We are of the opinion that the flasks in the present case are clearly distinguishable from- the ingot molds with which the Wheeling Steel Case, supra, was concerned, and that the decision of the Board of Tax Appeals is neither unlawful nor unreasonable.
The decision of the Board of Tax Appeals is affirmed.

Decision affirmed.

Weygandt, C. J., Zimmerman, Middleton, Matthias and Hart, JJ., concur.
Taft, J., concurs in the syllabus and in the judgment.